IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SALLY A. GILLETTE,                          3:14-CV-00222-BR

            Plaintiff,                      OPINION AND ORDER

v.

THE WILSON SONSINI GROUP
WELFARE BENEFIT PLAN; CIGNA
CORPORATION; CONNECTICUT
GENERAL LIFE INSURANCE
COMPANY; CIGNA HEALTHCARE OF
CALIFORNIA; BETTY LYDDON, in
her capacity as fiduciary to
the Wilson Sonsini Goodrich &
Rosati Group Welfare Plan;
and DONALD E. BRADLEY, in his
capacity as fiduciary to the
Wilson Sonsini Goodrich &
Rosati Group Welfare Plan,

            Defendants.


SALLY A. GILLETTE
9655 S.W. 52nd Avenue, #55
Portland, OR 97223
(503) 957-7165

            Plaintiff, *Pro Se*

1 - OPINION AND ORDER

**WILLIAM T. PATTON**
**COZETTE T. TRAN-CAFFEE**
Lane Powell, PC
601 S.W. Second Avenue
Suite 2100
Portland, OR 97204-3158
(503) 778-2100

        Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion
(#20) to Dismiss and Plaintiff's Request (#32) for Judicial
Notice.  For the reasons that follow, the Court **GRANTS**
Plaintiff's Request and **GRANTS** Defendants' Motion.


                    <u>**BACKGROUND**</u>

    The following facts are taken from Plaintiff's Complaint and
the documents of which the Court takes judicial notice.

    Plaintiff Sally A. Gillette was a participant at all
relevant times in the Wilson Sonsini Goodrich & Rosati Welfare
Benefit Plan (WSGR Plan) sponsored by Plaintiff's former
employer, Wilson Sonsini Goodrich & Rosati, a law firm in Palo
Alto, California.  Prior to 1998 Plaintiff's son Jesse Gillette
was also a participant in the WSGR Plan.

    At some point in 1998 when Plaintiff's son Jesse Gillette
reached age 19, Defendants terminated Jesse Gillette's coverage
under the WSGR Plan.  Plaintiff then entered into a protracted

2 - OPINION AND ORDER

dispute with Defendants regarding the termination of Jesse Gillette's coverage.

At some point before February 24, 2003, Plaintiff and Defendants resolved the dispute related to Jesse Gillette's coverage, and Defendants reinstated his coverage under the WSGR Plan retroactive for four years.

Less than one year after Jesse Gillette's coverage was reinstated, he married and Defendants terminated his coverage under the WSGR Plan. Jesse Gillette, however, obtained "COBRA continuation coverage under the Plan."

On June 7, 2006, Jesse Gillette died.

In 2008 Plaintiff, acting as the personal representative of Jesse Gillette's estate, filed a wrongful-death and medical-malpractice action against Jesse Gillette's healthcare providers[1] in Clackamas County Circuit Court.

On April 2, 2010, Plaintiff settled the wrongful-death and medical-malpractice case for $300,000. Defendant Connecticut General Life Insurance Company (CGLIC) and the WSGR Plan asserted a subrogation lien in connection with the wrongful-death and medical-malpractice case. On May 12, 2010, Plaintiff received notice of the subrogation lien.

On July 1, 2010, Plaintiff, acting *pro se*, served a Notice

---

[1] Those healthcare providers are not defendants in this action.

3 - OPINION AND ORDER

of Disallowance on the WSGR Plan and Defendant Cigna Healthcare
of California, Inc. (CHC) in which Plaintiff notified them that
their subrogation claim would be disallowed as invalid on
August 1, 2010.

On July 26, 2010, Plaintiff filed a Petition for Approval of
Final Distribution of Settlement Funds in Clackamas County
Circuit Court in which she noted the subrogation lien had been
resolved and CGLIC and the WSGR Plan waived their claim to the
settlement proceeds.

On August 12, 2010, the court approved the final
distribution of settlement funds.

On February 11, 2014, Plaintiff filed an action in this
Court against the WSGR Plan, CIGNA Corporation, CGLIC, CHC, and
others alleging Defendants breached their fiduciary duty under
various provisions of the Employee Retirement Income Security Act
(ERISA), 29 U.S.C. § 1001, *et seq.* Specifically, Plaintiff
alleges Defendants breached their fiduciary duty when they
violated (1) 29 U.S.C. § 1162(3)(A) by improperly calculating the
premium for Jesse Gillette's COBRA continuation coverage and
(2) 29 U.S.C. §§ 1103, 1104, and 1106 by asserting a subrogation
lien on the settlement of Plaintiff's state-court wrongful-death
action.

On July 18, 2014, Defendants filed a Motion to Dismiss
Plaintiff's claims.

4 - OPINION AND ORDER

On October 10, 2014, Plaintiff filed a Request for Judicial Notice.  The Court took Defendants' Motion and Plaintiff's Request under advisement on October 21, 2014.

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

Plaintiff requests the Court take judicial notice of various documents filed in probate court during the pendency of the probate of Jessie Gillette's estate.

### I.    Standards

Federal Rule of Evidence 201 allows a court to take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The court may take judicial notice of documents that are matters of public record.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)(A district court may take "judicial notice of matters of public record outside the pleadings" when determining whether a complaint fails to state a claim.).

### II.   Analysis

As noted, Plaintiff requests the Court take judicial notice of various documents filed in probate court during the pendency of the probate of Jessie Gillette's estate.  Defendants do not oppose Plaintiff's Request.  These documents are all matters of public record and publicly available, and their accuracy is not

5 - OPINION AND ORDER

reasonably subject to debate.

Accordingly, the Court **GRANTS** Plaintiff's Request and takes judicial notice of the documents referenced in Plaintiff's Request.

## DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Plaintiff's claims on the grounds that they are barred by the applicable statutes of limitation or, in the alternative that Plaintiff has failed to allege sufficient facts to state claims for violations of ERISA.

## I.    Standards

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the

plaintiff.  *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).

A *pro se* plaintiff's complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Thus, the Court has an "obligation [when] the petitioner is *pro se* . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt."  *Akhtar v. Mesa*, 698 F.3d at 1212 (quotation omitted).  "[B]efore dismissing a *pro se* complaint the . . . court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively."  *Id.* (quotation omitted).  "A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Id.* (quotation omitted).

## II.  Violation of § 1162(3)(A) for improper premium calculation

As noted, Plaintiff alleges Defendants breached their fiduciary duty when they violated 29 U.S.C. § 1162(3)(A)[2] by improperly calculating the premium for Jesse Gillette's COBRA continuation coverage.  Although it appeared from Plaintiff's Complaint that she brought her claim for improper calculation of Jesse's Gillette's COBRA premium under ERISA 29 U.S.C. § 1332(a)(3), Plaintiff makes clear in her Opposition to Defendants' Motion to Dismiss that she brings her claim under ERISA, 29 U.S.C. § 1132(a)(2).

Section 1132(a)(2) provides in pertinent part that "a civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  Under 29 U.S.C. § 1109(a) any person who is an ERISA fiduciary and breaches his fiduciary duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach."

ERISA contains a statute of limitations for claims for breach of fiduciary duty as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . after the earlier of --

---

[2] This section provides:  "The plan may require payment of a premium for any period of continuation coverage, except that such premium – (A) shall not exceed 102 percent of the applicable premium for such period."

8 – OPINION AND ORDER

> (1) six years after (A) the date of the last
> action which constituted a part of the breach
> or violation, or (B) in the case of an
> omission the latest date on which the
> fiduciary could have cured the breach or
> violation, or
>
> (2) three years after the earliest date on
> which the plaintiff had actual knowledge of
> the breach or violation;
>
> except that in the case of fraud or concealment,
> such action may be commenced not later than six
> years after the date of discovery of such breach
> or violation.

29 U.S.C. § 1113.

Defendants assert Plaintiff's claim for improper COBRA
calculation is barred by § 1113 because Plaintiff brought this
action more than three years after the date on which she had
actual knowledge of the alleged violation.  Specifically,
Plaintiff alleges in her Complaint that "less than one year after
Jesse Gillette's benefits were reinstated" (i.e., at some point
before February 24, 2003), Jesse Gillette applied for COBRA
coverage and Plaintiff "was concerned that the premium seemed
excessive."  Compl. at ¶ 23.  Plaintiff alleges she "calculated
the [COBRA] premium from Form 5500s and other Plan Documents, and
her calculations indicated that the COBRA premium was excessive
and improperly calculated."  Id.  According to Defendants, the
Complaint establishes Plaintiff had actual knowledge of
Defendants' alleged violation of ERISA at some point in early
2003, which is more than three years before Plaintiff filed this

9 - OPINION AND ORDER

action in February 2014.  In the alternative, Defendants assert
June 7, 2006, is the "date of the last action which constituted a
part of the [alleged] . . . violation" because June 7, 2006, is
the date on which Jesse Gillette died.  Because June 7, 2006, was
more than six years before Plaintiff filed this action in
February 2014, Plaintiff's claim related to COBRA premiums is
untimely under either limitations period set out in § 1113.

Plaintiff, however, asserts her COBRA premium claim is not
untimely based on the exception in § 1113, which provides "in the
case of fraud or concealment" an action for breach of an ERISA
fiduciary duty "may be commenced not later than six years after
the date of *discovery* of such breach or violation."  Emphasis
added.  Specifically, Plaintiff asserts Defendants refused to
provide her with the documents and the methodology that
Defendants used to calculate the premiums or information
regarding the costs factored into the premium calculation.
Defendants, therefore, concealed the information that Plaintiff
needed to have "actual knowledge" of Defendants' COBRA premium
violation.  According to Plaintiff, "[i]n order to have actual
knowledge that the COBRA premium was excessive, Plaintiff would
have to know the methodology used to calculate the premiums as
well as all of the costs that were factored into the premium
calculation."  Pl.'s Opp'n at 9.

Courts, however, have made clear that the ERISA "statute of

limitations is triggered by [Plaintiff's] knowledge of the transaction that constituted the alleged violation" rather than the fact that the transaction violated ERISA. *See Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985)(citations omitted). *See also Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 660 (4th Cir. 2009)(To have actual knowledge sufficient to begin the limitations period under § 1113, "circuits, including the Sixth, Seventh, Ninth, and Eleventh Circuits, require only that the plaintiff have knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute.").

Plaintiff does not allege in her Complaint that she has any more knowledge of the "methodology used to calculate the premiums [or of] all of the costs that were factored into the premium calculation" now than she did when she first suspected Defendants were charging Jesse Gillette excessive premiums between February 2003 and June 2006. Indeed the allegations in Plaintiff's Complaint taken at face value show Plaintiff had actual knowledge that Defendants were charging Jesse Gillette an excessive COBRA premium as early as February 2003 and not later than June 2006. The allegations in Plaintiff's Complaint also show the date of the last action that constituted a part of the alleged violation

occurred in June 2006 when Jesse Gillette died and, therefore, was no longer receiving COBRA coverage.  Plaintiff's claim, therefore, is untimely because Plaintiff brought her claim outside of both possible limitations periods in § 1113.

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's First Claim for breach of fiduciary duty for charging Jesse Gillette excessive COBRA premiums.

## III. Violations of §§ 403, 404, 406(a) and (b), and 409

Plaintiff brings two additional claims for breach of fiduciary duty based on the same set of allegations.  The first is a claim for "prohibited transactions and self-dealing violations of ERISA § 406(a) and (b)" and the second is a claim for breach of ERISA §§ 403, 404, and 409.

Sections 406(a) and (b) provide in pertinent part:

> (1)  A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--

> \* \* \*

> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

> \* \* \*

> A fiduciary with respect to a plan shall not--

> (1) deal with the assets of the plan in his own interest or for his own account,

> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a

party) whose interests are adverse to the
interests of the plan or the interests of its
participants or beneficiaries.

29 U.S.C. § 1106(a)(1)(D) and (b)(2). ERISA § 403 provides in

pertinent part that "the assets of a plan shall never inure to

the benefit of any employer and shall be held for the exclusive

purposes of providing benefits to participants in the plan and

their beneficiaries and defraying reasonable expenses of

administering the plan." 29 U.S.C. §1103(c)(1). ERISA § 404 in

pertinent part generally requires ERISA fiduciaries to discharge

their duties "with respect to a plan solely in the interest of

the participants and beneficiaries" and with "the care, skill,

prudence, and diligence under the circumstances then prevailing

that [prudent persons] acting in a like capacity and familiar

with such matters would use in the conduct of an enterprise of a

like character and with like aims." 29 U.S.C. § 1104(a).

Finally, ERISA § 409 provides in pertinent part:

> Any person who is a fiduciary with respect to a
> plan who breaches any of the responsibilities,
> obligations, or duties imposed upon fiduciaries by
> this subchapter shall be personally liable to make
> good to such plan any losses to the plan resulting
> from each such breach, and to restore to such plan
> any profits of such fiduciary which have been made
> through use of assets of the plan by the
> fiduciary, and shall be subject to such other
> equitable or remedial relief as the court may deem
> appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

Plaintiff alleges the following in support of her claims

that Defendants violated §§ 403, 404, and 406:[3]

> 29. When Jesse died as the result of a medical error, Plaintiff brought a lawsuit against the negligent medical providers. Cigna Defendants asserted a subrogation lien for reimbursement of medical payments made by the WSGR Plan for treatment of the injuries that caused Jesse's death.

> 30. Cigna Defendants' lien caused a bitter conflict between Plaintiff and her attorney, who was acting as a recovery agent for Cigna Defendants. Plaintiff did not believe Cigna Defendants had subrogation rights under the Plan. Plaintiff's attorney wrote to the Plan Administrator requesting evidence of Cigna Defendants subrogation rights. WSGR failed to provide evidence, but Plaintiff's attorney refused to release thousands of dollars that were being held in trust.

> 31. In July 2010, Plaintiff served a Notice of Disallowance on the WSGR Plan Administrator and Cigna Defendants, notifying the fiduciaries that if they did not provide evidence of the subrogation rights, their claim would be disallowed on August 1, 2010. Defendants did not provide evidence, and Cigna Defendants waived the lien.

Compl. at ¶¶ 29-31. Plaintiff also alleges Defendants' actions constituted collecting, receiving, and using Plan assets that Defendants were not entitled to in violation of ERISA §§ 403, 404, and 406.

Defendants, however, assert Plaintiff's claims based on Defendants' alleged violations of §§ 403, 404, and 406 are barred

---

[3] As noted, § 409 provides relief for breach of an ERISA fiduciary's duty, and it does not provide a stand-alone claim for violation of ERISA.

by the three-year limitations period in § 1113 because the facts
alleged in Plaintiff's Complaint establish Plaintiff had actual
knowledge of those that give rise to her claims not later than
July 1, 2010.

As pled, Defendants' assertion of a subrogation lien in
connection with settlement of Plaintiff's wrongful-death action
constitutes the alleged violation of ERISA that gives rise to
Plaintiff's Second and Third Claims for breach of fiduciary duty.
As noted, Plaintiff alleges she "served a Notice of Disallowance"
in July 2010 in which she notified Defendants that "their claim
would be disallowed on August 1, 2010," if they did not provide
evidence of their subrogation rights. Accordingly, Plaintiff
knew by August 1, 2010, at the latest that Defendants had
asserted a subrogation lien that Plaintiff believed was not
permitted by Defendants. Even if Plaintiff did not know in July
2010 that Defendants' actions violated ERISA, the Ninth Circuit
has made clear the limitations period in § 1113 begins to run
when a plaintiff has knowledge of the defendant's allegedly
unlawful actions rather than when a plaintiff has knowledge that
the defendant's actions were unlawful pursuant to a particular
statute. *See, e.g., Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193
(9th Cir. 2001)("[A] plaintiff has actual knowledge of the breach
or violation within the meaning of ERISA . . . § 1113(2), when he
has knowledge of all material facts necessary to understand that

an ERISA fiduciary has breached his or her duty or otherwise violated the Act.  Although a plaintiff need not have knowledge of the relevant law, he must have knowledge of all facts necessary to constitute a claim.")(citations omitted)); *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985)("The statute of limitations is triggered by the defendants' knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law."); *Spinedex Physical Therapy, U.S.A., Inc. v. United Healthcare of Ariz., Inc.,* No. CV-08-00457-PHX-ROS, 2012 WL 8147128, at *3 (D. Ariz. Oct. 24, 2012)("In the context of a claim for breach of fiduciary duty, it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality for the statute of limitations to begin to run.")(quotations omitted).

Plaintiff's allegations in the Complaint establish Plaintiff was aware of Defendants' assertion of a subrogation lien no later than July 2010 and that Plaintiff believed such a lien was unauthorized.  Plaintiff, however, did not file this action until February 2014, which is more than three years after her Second and Third Claims for breach of fiduciary duty accrued and, therefore, after the limitations period expired.  Thus, Plaintiff's Second and Third Claims are untimely.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's Second and Third Claims.

## IV.  Claim for Equitable Relief

Plaintiff brings a Fourth Claim for "Equitable Relief" under
29 U.S.C. § 1132(a)(3), which allows a civil action to be brought
"by a participant [or] beneficiary (A) to enjoin any act or
practice which violates any provision of this subchapter or the
terms of the plan, or (B) to obtain other appropriate equitable
relief (I) to redress such violations or (ii) to enforce any
provisions of this subchapter or the terms of the plan."  In her
Complaint Plaintiff does not allege additional or different facts
to support her claim under § 1132(a)(3).  Instead she "repeats
and re-alleges the allegations contained in all foregoing
paragraphs" of her Complaint.  Plaintiff states in her Opposition
that she brings her claim under § 1132(a)(3) merely as an
alternative to her claims under § 1132(a)(2) because claims under
§ 1132(a)(2) only permit relief for the Plan as a whole and
Plaintiff seeks individual equitable relief for herself.  Claims
under § 1132(a)(3), however, are also circumscribed by the
limitations period in § 1113.  *See, e.g., Mrkonjic v. Delta
Family-Care and Survivorship Plan,* No. 10-02087 GAF JCX, 2013 WL
8292329, at *6 (C.D. Cal. Jan 3, 2013)(citing 29 U.S.C. § 1113).
Thus, for the same reasons the Court found Plaintiff's First,
Second, and Third Claims to be untimely, the Court also finds
Plaintiff's Fourth Claim for individual equitable relief is
untimely.

17 - OPINION AND ORDER

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Fourth Claim.

## VI.  Leave to Amend

The Ninth Circuit has held in the case of *pro se* plaintiffs that "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)(quotation omitted).  The Court, however, concludes in this case that leave to amend would be futile.  Jesse Gillette died in June 2006, and Plaintiff's interactions with Defendants related to Jesse Gillette's participation in the Plan and/or Plaintiff's settlement of the wrongful-death action ended not later than August 12, 2010, when the state court approved the final distribution of settlement funds to Plaintiff.  Thus, Plaintiff cannot allege any further interactions with Defendants related to their duties under the Plan as to Jesse Gillette.

Accordingly, the Court declines to grant Plaintiff leave to file an amended complaint.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Request (#32) for Judicial Notice, **GRANTS** Defendants' Motion (#20) to

18 - OPINION AND ORDER

Dismiss, and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 31st day of October, 2014.


_____
ANNA J. BROWN
United States District Judge